IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
-----------------------------------------------------x
                                                     :
GAIL A. LEONZI                                       :        3:01 CV 1111 (JGM)
                                                     :
v.                                                   :
                                                     :
CITY OF BRIDGEPORT, et al                            :
                                                     :        DATE:  FEB. 10, 2004
                                                     :
-----------------------------------------------------X
```

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Gail Leonzi, a Bridgeport civil service employee, initiated this action on June 18, 2001, alleging that the defendants, City of Bridgeport, Dennis Buckley and William Shaw discriminated against her in her employment by failing to promote her to positions for which she applied and for which she has been qualified.  (Dkt. #1).  Specifically, plaintiff alleges the following seven counts in her Complaint: (1) race discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ["Title VII"] and the Connecticut Fair Employment Practices Act ["CFEPA"], CONN. GEN. STAT. §§ 46a-58(a) and 46(a)-60(a)(1) ["CFEPA"] (Counts One and Three); (2) age discrimination pursuant to the Age Discrimination in Employment Act of 1991 ["ADEA"], 29 U.S.C. §§ 621-34 and CFEPA (Counts Two and Four); (3) denial of equal protection (Count Five); (4) discrimination and retaliation because of exercise of her First Amendment rights (Count Six); and (5) intentional or reckless infliction of emotional distress (Count Seven).   Defendants filed their Answer on January 30, 2002. (Dkt. #7).

On November 5, 2002, the parties consented to trial before this Magistrate Judge. (Dkt. #13).   After nine motions for extension of time were granted (Dkts. ##18-26 & endorsements thereon), defendants filed the pending Motion for Summary Judgment and

brief in support on July 21, 2003.  (Dkts. ##27-28).[1]  On August 25, 2003, defendants filed their Substitute Local Rule 56(a)1 Statement.  (Dkt. #34).[2]  On September 17, 2003, this Magistrate Judge issued an Order directing plaintiff to file a supplemental Local Rule 56(a)2 Statement and brief in opposition to defendants' Motion for Summary Judgment (Dkt. #35) and in accordance with such Order, plaintiff filed her Revised Statement of Material Facts and brief in opposition on October 14, 2003.  (Dkts. ##36-37).

## I. FACTUAL SUMMARY

The factual summary is based on defendants' Substitute Local Rule 56(a)1

_____

[1]Attached to defendants' brief in support (Dkt. #28) are the following twelve exhibits: defendants' Local Rule 56(a)1 Statement, dated July 21, 2003 (Exh. 1); affidavit of defendant Shaw, dated July 21, 2003 ["Shaw Aff't"](Exh. 2); affidavit of John Colligan, dated July 21, 2003 ["Colligan Aff't"](Exh. 3); copy of description of "typical day" (Exh. 4); affidavit of Fleeta Hudson, dated July 18, 2003 ["Hudson Aff't"] (Exh. 5); copy of job descriptions of Typist I-III and Mini-Computer Operator (Exh. 6); copies of Section 210: Re-employment lists; Section 211: Tests for employment and promotion, Lists; Section 211.1: Prevention of Discrimination; Section 212: Rejection of certain persons; appeal; Section 213: Appointments to positions in the competitive division of the classified service (Exh. 7); copy of deposition transcript of Gail Leonzi, dated February 22, 2003 ["Plaintiff Depo."] (Exh. 8); copy of employee history of Gail Leonzi, Mary Puccio, Rosa Caligas, and Yvonne Crossman (Exh. 9); copy of correspondence, dated March 11, 2000 (Exh. 10); copies of photo with inscriptions, dated January 23-24, 1998, February 17 & 25, 1998, copy of cartoon with inscription, copy of newspaper articles dated July 11, 2001 and December 11, 2002 (Exh. 11); and excerpts of copies of labor agreements (Exh. 12).

The procedural history thereafter becomes circuitous.  On August 11, 2003, plaintiff filed her Motion to Strike Rule 56(a)1 Statement and brief in opposition, based upon defendants' alleged failure to file a proper Local Rule 56(a)1 Statement.  (Dkts. ##29-30).  Four days later, defendants sought leave to file a substitute Local Rule 56(a)1 Statement (Dkt. #31) and seven days later, plaintiff filed her supplemental brief in opposition and her Local Rule 56 Statement. (Dkts. ##32-33).  On August 25, 2003, this Magistrate Judge granted defendants' Motion for Leave and that same day, defendants filed their substitute Statement of Material Facts.  (Dkt. #34; 8/25/2003 endorsement on Dkt. #31).  The next day, plaintiff's Motion to Strike was denied. (Dkt. #29 & 8/26/03 endorsement thereon).

[2]See note 1 supra.

Statement of Facts, filed August 25, 2003 (Dkt. #34) ["Defendants' Statement"], plaintiff's Revised Local Rule 56(a)2 Statement of Facts, filed on October 14, 2003 (Dkt. #36)["Plaintiff's Statement"][3] and documents cited therein, and consequently does not represent factual findings of the Court.

Defendant Shaw has been the City Planning Engineer in charge of the City of Bridgeport's ["City"] Zoning Department at all times relevant to plaintiff's Complaint. (Defendants' Statement ¶ 1; Plaintiff's Statement I ¶ 1; Shaw Aff't ¶ 1). Defendant Buckley is a Zoning Enforcement Officer to whom defendant Shaw grants supervisory authority in his absence. (Defendants' Statement ¶ 2; Plaintiff's Statement I ¶ 2; Shaw Aff't ¶ 8). John Colligan, Bridgeport's Personnel Director, knows the employment status of plaintiff, Yvonne Crossman, Rosa Cajigas, and Mary Puccio; Crossman, Cajigas and Puccio are City employees who, according to plaintiff, have been treated more preferably and given more employment opportunities than plaintiff. (Defendants' Statement ¶ 3; Plaintiff's Statement I ¶ 3; Colligan Aff't ¶ 1; Plaintiff's Statement II ¶¶ 7, 11-15).

Since April 1985, plaintiff has been continuously employed by the City as a Typist. (Defendants' Statement ¶ 4; Plaintiff's Statement I ¶ 4; Colligan Aff't ¶ 2). Typist positions are divided into three classifications, with Typist I being an entry-level position, Typist II the first promotional grade, and Typist III the highest promotional class. (Defendants' Statement ¶ 4; Plaintiff's Statement I ¶ 4; Colligan Aff't ¶ 2). All typist positions are in the competitive division of the classified service of Bridgeport's Civil Service System. (Defendants' Statement ¶ 5; Plaintiff's Statement I ¶ 5; Colligan Aff't ¶ 3). Section 211(a) of the Bridgeport Charter provides: "The personnel director shall, from time to time, as conditions

_____

[3]Plaintiff's Local Rule 56(a)2 Statement appears in two parts: Response to Defendants' Claims of Fact [I]; and Plaintiff's Statement of Material Facts [II].

warrant, hold tests for the purpose of establishing employment lists for the various positions in the competitive divisions of the classified service." (Defendants' Statement ¶ 6; see Plaintiff's Statement I ¶ 6; Dkt. #28, Exh. 7, at 9). The City holds examinations for the entry level position of Typist I whenever it needs new employees within that class. (Defendants' Statement ¶ 6; see Plaintiff's Statement I ¶ 6; Colligan Aff't ¶ 4 ). Section 211(b) of the Bridgeport Charter directs the City to hold examinations for the promotional positions of Typist II and Typist III within one hundred and twenty days of the date of the first vacancy within a promotional class for which there is no re-employment or employment list. (Defendants' Statement ¶ 6; see Plaintiff's Statement I ¶ 6; Colligan Aff't ¶ 4; Dkt. #28, Exh. 7, at 11).

Plaintiff passed her Typist I exam in April 1985, and gained employment with the City of Bridgeport. (Defendants' Statement ¶ 7; Plaintiff's Statement I ¶ 7; Colligan Aff't ¶ 5). She passed a Typist II examination administered by the City in 1989, and she received a promotion to Typist II in February 1990. (Id.). The City has not administered a promotional examination for the Typist III position since that time. (Id.).

On February 5, 2001, defendant Shaw granted Puccio early dismissal from work during a snowstorm; plaintiff was denied as early of a dismissal as Puccio. (Defendants' Statement ¶ 18; see Plaintiff's Statement I ¶ 18; Shaw Aff't ¶ 9). At no time has defendant Buckley raised his voice to, or offensively touched, plaintiff during their respective tenures in the Zoning Department. (Defendants' Statement ¶ 19; Plaintiff's Statement I ¶ 19; Plaintiff Depo. at 104). Plaintiff has never been disciplined or demoted while employed at the Bridgeport Zoning Department. (Defendants' Statement ¶ 22; Plaintiff's Statement I ¶ 22; Plaintiff Depo. at 75, 108). Notwithstanding the claims set forth in her Complaint, plaintiff remained fully productive in her job at the Zoning Department from at least 1997 to the

4

present. (Defendants' Statement ¶ 23; Plaintiff's Statement I ¶ 23; Plaintiff Depo. at 108-09, 112).

In their Motion for Summary Judgment, defendants assert that plaintiff has not established a prima facie case of race discrimination under Title VII and CFEPA because she has not produced evidence that she suffered an adverse employment action, or that the action "occurred under circumstances giving rise to an inference of [racial] discrimination." (Dkt. #28, at 16-19). Moreover, defendants contend that even if plaintiff has established a prima facie case, defendants have articulated a legitimate non-discriminatory reason for their actions, which plaintiff has not rebutted with evidence that the reason is pretextual. (Id. at 19-21). Defendants assert that the problems of proof which defeat plaintiff's race discrimination claim also defeat her ADEA and age-based CFEPA claims.[4] (Id. at 21-25). Specifically, according to defendants, she has not established two of the four elements of her prima facie case (id. at 22), and she has not produced evidence suggesting that defendants' articulated reason is a pretext for age discrimination. (Id. at 24-25).

Additionally, defendants challenge plaintiff's assertion that they violated her equal protection rights because: (i) any claims based on the denials of promotion that allegedly occurred in 1993 and 1996 are time-barred (id. at 26); and (ii) plaintiff cannot show that defendants intentionally discriminated against her. (Id. at 25-26). In response to plaintiff's 42 U.S.C. § 1983 harassment claim, defendants assert that all but one of her claims are time-barred, and, alternatively, that the incidents were not "severe and pervasive" enough to create a hostile work environment. (Id. at 27-30).

Moreover, according to defendants, plaintiff's claims of violation of her First

---

[4]These claims are also analyzed under the Title VII burden shifting analysis. (Dkt. # 28, at 21-22).

Amendment right to free speech and free association fail as plaintiff has failed to demonstrate that her speech addressed a matter of public concern, and thus was constitutionally protected. (Id. at 31). In addition, according to defendants, plaintiff's proof does not evince an adverse employment action and even if defendants' actions were adverse, she does not demonstrate a causal connection between her speech and defendants' conduct. (Id. at 31-32).

Defendants also challenge plaintiff's intentional infliction of emotional distress claim because, according to defendants, defendant Buckley's comments were not "extreme and outrageous," exceeding "all bounds usually tolerated by a decent society" (id. at 33), and plaintiff has not produced evidence that supervisors or coworkers intended to inflict emotional distress upon her. (Id. at 34). Defendants also claim qualified immunity in response to plaintiff's constitutional claims. (Id. at 34).

Plaintiff's brief in opposition[5] is limited to the following arguments: (1) the Second Circuit has recognized equal protection claims based on a "class of one" (Dkt. # 37, at 7-8); (2) the evidence shows that plaintiff "has been intentionally treated differently from others similarly situated[,] and that there is no rational basis for the difference in treatment" (id. at 7-8)(quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)["Olech"]); and (3) plaintiff may prove an equal protection violation by showing "either that there was no rational basis for the unequal treatment received, or that the [unequal treatment] was motivated by animus." (Id. at 8)(multiple citations & internal citations omitted).

## II. DISCUSSION

The standard for summary judgment is well-established. The moving party is entitled to summary judgment if it demonstrates that there is no genuine issue of material fact and

---

[5]The pages of plaintiff's brief are not numbered.

that it is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Upon motion, after

adequate time for discovery, Rule 56(c) mandates the entry of summary judgment against

a party

> who fails to make a showing sufficient to establish the existence of
> an element essential to that party's case, and on which that party
> will bear the burden of proof at trial. In such a situation, there can be
> "no genuine issue as to any material fact," since a complete failure
> of proof concerning an essential element of the nonmoving party's
> case necessarily renders all other facts immaterial. The moving
> party is "entitled to a judgment as a matter of law" because the
> nonmoving party has failed to make a sufficient showing on an
> essential element of her case with respect to which she has the
> burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This showing may be made by

"pleadings, depositions, answers to interrogatories, and admissions on file, together with

affidavits, if any."  FED. R. CIV. P. 56(c).  However, "Rule 56(e) itself provides that a party

opposing a properly supported motion for summary judgment may not rest upon mere

allegations or denials of his pleading, but must set forth specific facts showing that there is

a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

"Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge. . . .  The

evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn

in his favor."  Id. at 255 (citation omitted).  "If reasonable minds could differ as to the import

of the evidence, . . . the moving party simply cannot obtain summary judgment."  R.B.

Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)(citations & internal quotation

omitted).

"As to materiality, the substantive law will identify which facts are material.  Only

disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." <u>Anderson</u>, 477 U.S. at 248 (citation omitted).  A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>  Although discrimination cases are fact-sensitive, and they generally involve inferences about a defendant's state of mind, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." <u>Abdu-Brisson v. Delta Air Lines, Inc.</u>, 239 F.3d 456, 466 (2d Cir.), <u>cert. denied</u>, 534 U.S. 993 (2001).

### A. PLAINTIFF'S TITLE VII, ADEA, AND CFEPA CLAIMS[6]

Title VII provides that "[i]t shall be an unlawful employment practice for an employer–(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color. . . ."  42 U.S.C. § 2000e-2(a) (2003).

In <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), the Supreme Court set forth a three-part burden shifting analysis that applies to claims of intentional disparate treatment brought under § 2000e-2 of Title VII.  <u>See also Terry v. Ashcroft</u>, 336 F.3d 128, 138 (2d Cir. 2003)(citation omitted).  First, the plaintiff must establish a prima facie case of racial discrimination by showing that "1) [s]he belonged to a protected class; 2) [s]he was qualified for the position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." <u>Id.</u> (citation omitted).  If the plaintiff establishes a prima facie case, the

---

[6]As previously indicated, plaintiff's brief in opposition does not address any of these claims.

burden shifts and the defendants must articulate a legitimate non-discriminatory reason for their actions.  McDonnell Douglas Corp., 411 U.S. at 802; Terry, 336 F.3d at 138 (citation omitted).

Once defendants have offered their reasons, the prima facie case drops away and the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant[s] were not [their] true reasons, but were a pretext for discrimination."  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 249 (1981); Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).  In other words, "once the defendant[s] ha[ve] made a showing of a neutral reason for the complained of action, to defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant[s'] employment decision was more likely than not based in whole or in part on discrimination."  Terry, 336 F.3d at 138 (citation & internal quotations omitted).

The same three-part burden shifting analysis applies to claims brought under the ADEA[7] and Connecticut's highest court has held that federal precedent is guidance for enforcing the State's anti-discrimination statutes.  See Terry, 336 F.3d at 137-38; Levy v. Commission on Human Rights and Opportunities, 236 Conn. 96, 103 (1996)(citation omitted).  Thus, the same legal analysis applies to all of plaintiff's age and racial discrimination claims.

### 1.  PLAINTIFF'S RACIAL DISCRIMINATION CLAIMS

Implicitly conceding that plaintiff belongs to a protected class and was qualified for

---

[7]The ADEA reads that "[i]t shall be unlawful for an employer– (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a).  The ADEA protects individuals over the age of forty.  29 U.S.C. § 631(a).

the position at issue, defendants contend that plaintiff cannot establish the third and fourth prongs of her prima facie case, namely that plaintiff suffered an adverse employment action and the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  (Dkt. # 28, at 17-19).  Plaintiff has not responded to this argument.

The Second Circuit has characterized "the evidence necessary to satisfy [the plaintiff's burden of presenting a prima facie case] as 'minimal' and 'de minimis.'" Zimmermann v. Associates First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001)(multiple citations omitted)(emphasis in original).  The term "adverse employment action" includes a broad range of supervisory decisions, including the "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title . . . or other indices . . . unique to a particular situation."  Terry, 336 F.3d at 138 (emphasis added)(citation omitted).  Thus, the City's failure to promote plaintiff to the comparatively distinguished title of "Minicomputer Operator" qualifies as an adverse employment action and satisfies the third prong of her prima facie case.

To satisfy the fourth prong of her prima facie case, plaintiff must produce evidence that the action occurred under circumstances that raise an inference of racial discrimination. Zimmerman, 251 F.3d at 381.  Although the Second Circuit has held that "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the prima facie stage of the Title VII analysis," it is questionable whether plaintiff has fulfilled this minimal burden. Id. at 381 (citations & emphasis omitted). Although plaintiff was not promoted and three other employees who had shorter tenures with

the City received provisional promotions[8] (see Colligan Aff't ¶¶ 10-12; Plaintiff Depo. at 47-49), the two employees who are not of the same race as plaintiff worked under a different supervisor in a different department. (Dkt. #28, Exh. 9; Colligan Aff't, ¶¶ 10-11; Hudson Aff't ¶¶ 2 & 5; Plaintiff Depo. at 56, 60). In the Zoning Department where plaintiff worked, only Puccio, another Caucasian woman, received a promotion. (Shaw Aff't ¶ 5; Colligan Aff't ¶ 12; Plaintiff Depo. at 49).

Moreover, even if plaintiff has established a weak prima facie case under the Second Circuit's minimal standard, defendants have articulated legitimate non-discriminatory reasons for their actions, and plaintiff has failed to produce evidence that defendants' reasons are a pretext for discrimination. Bridgeport City Clerk Fleeta Hudson recommended two of the promotions in question to employees under her supervision who were already performing duties beyond their civil service classifications and whose promotions met operational need within the City Clerk's Office. (Hudson Aff't ¶¶ 4-7). Hudson's request for these upgrades is consonant with the employees' collective bargaining agreement. (Dkt. # 28, at 18; Dkt. #28, Exh. 12, at 24, ¶ 12.8). Since they were merely intra-departmental adjustments of employees' salaries to reflect their increased workloads, the evidence before the Court indicates that Hudson requested the promotions for reasons other than racial discrimination. (See Hudson Aff't ¶¶ 4-7). Plaintiff has not produced any evidence to rebut this rational conclusion. In fact, plaintiff's deposition testimony evidences her belief that the underlying problem is not racial discrimination, but a "civil service issue" involving, in part, problems within the NAGE union. (Dkt. #28, at 20-21; Plaintiff Depo. at 26-28, 32-33, 55-58).

---

[8]Of the three employees who were promoted, two were of a different race than plaintiff -- Crossman is an African-American woman, and Cajigas is a Hispanic woman, while Puccio and plaintiff are Caucasian women. (See Plaintiff Depo. at 47-49).

The third beneficiary of an upgrade, Puccio, is an employee in plaintiff's department who also works under defendant Shaw's supervision, and is of the same race as plaintiff. (Plaintiff Depo. at 49).  Thus, Shaw's disparate treatment of Puccio does not raise an inference of racial discrimination.  In addition, both Shaw and plaintiff have stated under oath that Shaw requested the promotion to prevent Puccio from losing her job.  (Shaw Aff't ¶ 5; Plaintiff Depo. at 42).

## 2.  PLAINTIFF'S AGE DISCRIMINATION CLAIM

Again, defendants contend that plaintiff has not fulfilled the third and fourth prongs of her prima facie case, and that she has not rebutted defendants' legitimate non-discriminatory reasons.  (Dkt. #28, at 22-25).  Plaintiff, again, has not responded to these arguments.

For the same reasons articulated above, plaintiff has fulfilled the third prong of her prima facie case.  Moreover, the fact that the employees who allegedly received favorable treatment are "substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." [9] O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312-13 (1996).  However, plaintiff has failed to demonstrate that the legitimate non-discriminatory reasons described above are a pretext for age discrimination.

The Supreme Court has held that "an employer [is] entitled to judgment as a matter of law if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason [is] untrue and there [is] abundant and uncontroverted independent

---

[9]Plaintiff is nineteen years older than Puccio, and fifteen and twenty-nine years older than Crossman and Cajigas, respectively.  (See Dkt. #28, Exh.  9).

evidence that no discrimination [has] occurred." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000). Plaintiff's case fits within that standard. As stated above, Crossman and Cajigas work in a different department under a different supervisor, and plaintiff testified that she believes Puccio received her promotion because Shaw did not want her to lose her job. In addition, plaintiff's own testimony acknowledges her belief that factors other than age may have caused the disparate treatment. (Dkt. #28, at 24-25; Plaintiff Depo. at 63-66).[10]

### B. PLAINTIFF'S EQUAL PROTECTION CLAIM

#### 1. DENIALS OF PROMOTION AS EQUAL PROTECTION VIOLATION

Plaintiff claims that defendants violated her constitutional right to equal protection by refusing to promote her because defendants' denials were intentional, irrational, and motivated by animus. (Dkt. #37, at 8). Defendants contend that the denials of promotion were unintentional and the pre-1998 denials are time-barred. (Dkt. #28, at 26-27).

Connecticut's three-year personal injury statute of limitations applies to claims brought under 42 U.S.C. § 1983. Walker v. Jastremski, 159 F.3d 117, 119 (2d Cir. 1998); see also Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002)(citations omitted), cert. denied, 538 U.S. 922 (2003). Plaintiff filed her Complaint on June 18, 2001. (Dkt. #1). Therefore, the alleged denials of promotion which occurred between 1993 and June 18, 1998 are time-barred. (See Plaintiff Depo. at 11-19).

Plaintiff, however, disputes events which occurred within the limitations period, namely the downgrading of a Typist III position about which she inquired, the provisional

---

[10]When asked why she believed that Puccio may have been treated preferably because of her age, plaintiff answered in part: "I don't know. I don't know. Frankly, I really don't even care about that." (Plaintiff Depo. at 63).

promotions of three less senior employees, and defendant Shaw's failure to respond to plaintiff's request to be considered for an upgrade.  (Plaintiff Depo. at  25, 37-46, 48-49).  Although plaintiff correctly notes that the Supreme Court has recognized equal protection claims based on a "class of one,"  in such cases the plaintiff must demonstrate that she was "treated differently from other similarly situated individuals, and . . . that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001)(multiple citations & internal quotations omitted); see Olech, 528 U.S. at 564 (multiple citations omitted)(equal protection claims brought by a "class of one" may be successful where the plaintiff alleges she has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment).  If plaintiff establishes a claim of differential treatment, she may state an equal protection claim by showing "either that there was no rational basis for the unequal treatment received,"[11] or that the unequal treatment was "motivated by animus."  Harlen Assocs., 273 F.3d at 500 (citations omitted); see also Russo v. City of Hartford, 184 F. Supp. 2d 169, 190 (D. Conn. 2002).  In sum, governmental officials may not engage in "arbitrary, purposeful and intentional discrimination."  Gelb v. Board of Elections of New York, 224 F.3d 149, 157 (2d Cir. 2000).

Plaintiff's evidence does not establish that defendants denied her promotions because of her race, or that defendants acted with an intent to punish her exercise of constitutional rights. Additionally, although she was treated differently from other City typists,

---

[11]The defendants' "decision can be considered irrational only when [the defendants] act[] with no legitimate reason for [their] decision," Harlen Assoc., 273 F.3d at 500 (citation & internal quotations omitted), a test which is clearly deferential to the decision-maker.

there is no evidence that the disparate treatment was intentional, there was a rational basis for such treatment, and there is no evidence that such treatment was motivated by animus. As stated above, Crossman and Cajigas worked in a different department, and Hudson provisionally promoted them because they were already performing at a level above their classifications.    In addition, both Shaw and plaintiff agree that Shaw requested Puccio's promotion to prevent her from losing her job, and although Shaw never responded to plaintiff's request for an upgrade, the evidence demonstrates that he needed to request additional funds before he could consider her request.  (Shaw Aff't ¶ 5; Plaintiff Depo. at 41-46).  Thus, the differential treatment of plaintiff was not intentional, and there are legitimate reasons for the actions to which plaintiff refers.

There are also rational reasons for the City's downgrading of Typist III positions and its refusal to administer the Typist III test.  John Colligan, the City's Personnel Director, averred that Bridgeport cannot administer the Typist III test due to a lack of funds.  (Colligan Aff't ¶ 6).  Moreover, the City's failure to administer the Typist III exam does not single out plaintiff.  The failure to administer the exam affects everyone who works for the City as a Typist II in a competitive division of the classified civil service, and thus does not target plaintiff as a "class of one."

In addition, plaintiff has produced no evidence that defendants' provisional promotion decisions were motivated by animus.  Hudson testified that plaintiff never worked for or applied for work at the City Clerk's office, so Hudson could not have preferred Crossman and Cajigas because of animus directed towards plaintiff. (Hudson Aff't ¶ 9).  Nor does plaintiff believe that her direct supervisor, defendant Shaw, harbors animus towards her.  (Plaintiff

15

Depo. at 34)("I have no problem with Mr. Shaw.").[12]  Moreover, plaintiff does not believe that the civil service department intentionally refused to administer tests in order to promote others while denying opportunities to her (id. at 66), and the City's failure to administer exams cannot be motivated by animus directed at plaintiff because the situation affected all Typist II's.   Finally, plaintiff does not believe that defendants Shaw and Buckley actively prevented her advancement in the civil service hierarchy.  (Plaintiff Depo. at 56-57, 66-68).

---

[12]Although plaintiff believes defendant Buckley dislikes her, she does not believe that he had authority over her in terms of the provisional promotions.  (Plaintiff Depo. at 67).

16

## 2.  HARASSMENT AS AN EQUAL PROTECTION VIOLATION

Plaintiff, who contends that defendant Buckley harassed her, also asserts a hostile work environment claim under 42 U.S.C. § 1983.  Specifically, plaintiff asserts that "[d]efendant Buckley, who attempts to exercise authority over the plaintiff and is in charge of the office in defendant Shaw's absence, consistently treats her more harshly than he does any other employee in the office."  (Dkt. #37, at 6).  Defendant argues that most of the incidents alleged by plaintiff are time-barred, and that the alleged harassment does not rise to the level of a constitutional tort.  (Dkt. #28, at 27-30).

The Second Circuit recognizes workplace harassment claims under § 1983 when there is evidence of an underlying constitutional violation, such as a violation of a plaintiff's equal protection rights.  Saulpaugh v. Monroe Comm. Hosp., 4 F.3d 134, 142-43 (2d Cir. 1993), cert denied, 510 U.S. 1164 (1994).  However, even if the underlying violation exists, a claim for harassment is actionable as a constitutional tort only when it "transcends coarse, hostile and boorish behavior."  Annis v. County of Westchester, N.Y., 36 F.3d 251, 254 (2d Cir. 1994)(citation omitted).

Although the Second Circuit has not clearly articulated a legal standard for § 1983 workplace harassment claims, district courts in this Circuit agree that such standard parallels Title VII harassment claims.  See, e.g.,  Lange v. Town of Monroe, 213 F. Supp. 2d  411, 423 (S.D.N.Y. 2002).  Title VII is implicated in cases in which the "workplace is permeated with discriminatory intimidation, ridicule, and insult" so as to "create an objectively hostile or abusive work environment."  Harris v. Forklift Sys., 510 U.S. 17, 21 (1993)(citations omitted).

As discussed above, any allegations of harassment occurring prior to June 18, 1998, are time-barred.  See Pearl, 296 F.3d at 79 (citations omitted).  All of plaintiff's allegations

relating to defendant Buckley's conduct occurred prior to June 18, 1998,[13] with the exception of plaintiff's claim that defendant Buckley harassed her by not releasing her from work prior to lunch during a snowstorm in 2001. According to plaintiff, on February 5, 2001, plaintiff was told by defendant Buckley that "if [she] wanted to leave early because of the weather[,] [she] could when [another employee] comes back from lunch. . . ." (Plaintiff Depo. at 96). Plaintiff later learned that Puccio left earlier and defendant Buckley had told another employee that plaintiff asked to leave early, though she did not. (Id. at 96-97).

Although all but one of the alleged acts of harassment are time-barred,

[t]he existence of past acts and the employee's prior knowledge of their occurrence, . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. . . [a]nd an employee [may] us[e] the prior acts as background evidence in support of a timely claim.

National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). In this case, however, defendant Buckley's decision during the 2001 snowstorm was not hostile as he still released

---

[13]In early May 1997, defendant Buckley "put up a daily schedule" of plaintiff's productivity. (Plaintiff Depo. at 75-77). Additionally, plaintiff testified that prior to this incident, defendant Buckley left a note on her desk that she was "insubordinate" because she returned from lunch later than he requested. (Id. at 71-79). However, in the latter case, defendant Buckley's actions were the result of a misunderstanding since he was not aware that Shaw had asked plaintiff to take a later lunch hour. (Id. at 72-74). Around this same time, plaintiff alleges that defendant Buckley noted that she misspelled a caller's name on a phone message. (Id. at 73). Plaintiff also testified that in 1997 or earlier, defendant Buckley would pass her in the hall and say, "Are you working today?" and her co-workers would not be questioned about their actions. (Id. at 80-83). Additionally, according to plaintiff, defendant Buckley suggested that her union hire someone to answer the member's questions because she was taking too much time in the hallways addressing their concerns. (Id. at 91-92). Plaintiff, however, was unable to recall when this occurred. (Id.).

Plaintiff also alleges that in early 1998, defendant Buckley acted unprofessionally by hanging pictures with handwritten captions of the former Zoning Inspector, Scott Jacobson. (Id. at 115-116 & 127).

plaintiff early from work and it was defendant Shaw who released Puccio from work one hour earlier than plaintiff so that Puccio could pick up her children from preschool. (Shaw Aff't ¶ 9; <u>see also</u> Plaintiff Depo. at 95-97).  Moreover, notwithstanding the untimely nature of plaintiff's remaining allegations, there is no evidence that these allegations establish a hostile environment so "permeated with discriminatory intimidation, ridicule, and insult," <u>Harris</u>, 510 U.S. at 21, and plaintiff's testimony that she remained "fully productive" at work and was never disciplined evidence the fact that she was not adversely affected by defendant Buckley's supervisory actions. (Plaintiff Depo. at 86, 108-11).

<u>C. FIRST AMENDMENT FREE SPEECH AND ASSOCIATION RIGHTS</u>[14]

To establish a First Amendment retaliation claim under § 1983, plaintiff must demonstrate by a preponderance of the evidence that: (1) her speech was constitutionally protected; (2) she suffered an adverse employment decision; and (3) a causal connection exists between her speech and the adverse employment determination such that it was a motivating factor in bringing about the determination.  <u>Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,</u> 429 U.S. 274, 283-87 (1977)(citations omitted).  Once plaintiff establishes the existence of these elements, defendants have the opportunity to show by a preponderance of the evidence that they would have taken the same adverse employment action "even in the absence of the protected conduct."  <u>Id.</u> at 287.

<u>1.  CONSTITUTIONALLY PROTECTED SPEECH</u>

In considering whether certain speech is constitutionally protected, the prevailing question is whether the speech may be "fairly characterized as constituting speech on a matter of public concern."  <u>Connick v. Myers</u>, 461 U.S. 138, 146 (1983). Speech on "any matter of political, social, or other concern to the community" is protected by the First

_____

[14]Plaintiff's brief in opposition does not address these issues.

Amendment.  Id.  In her Complaint, plaintiff alleges that defendants have "denied plaintiff promotion[s] to positions for which she has applied and for which she has been qualified" and have "subjected . . .  plaintiff to a continuous pattern and practice of harassment and abuse." (Dkt. #1, Count Six, ¶ 8).  Defendants' actions, according to plaintiff, were done in retaliation against plaintiff, to punish her for "repeated complaints concerning political favoritism and illegality in the operation of the Bridgeport civil service system." (Id.).

      Plaintiff has not provided evidence of the specific complaints which include speech that she asserts is protected; therefore a determination as to whether plaintiff's alleged speech is of a class that is constitutionally protected can not be made with the evidence before the Court.  Moreover, although plaintiff filed a grievance with the City of Bridgeport's Department of Labor Relations office in 1997 (Plaintiff Depo. at 127-28), any allegations of discrimination contained therein are time-barred by Connecticut's three-year personal injury statute of limitations applicable to claims brought under 42 U.S.C. § 1983.  See Pearl, 296 F.3d at 79 (citations omitted).  Additionally, in her deposition plaintiff testified as to a hearing scheduled at the Connecticut Department of Labor in Wethersfield in response to her grievance; however, in describing her concerns, plaintiff mentioned only her personal complaints about the treatment allegedly imposed by defendant Buckley. (Id. at 127-29).  Absent unusual circumstances, "a federal court is not the appropriate forum in which to review" decisions made in response to speech "upon matters only of a personal interest." Connick, 461 U.S. at 147 (citation omitted).  Nothing before the Court evidences complaints made by the plaintiff "concerning [the] political favoritism and illegality in the operation of the Bridgeport civil service system" alleged by plaintiff.  (Dkt. #1, Count Six, ¶ 8).

### 2.  ADVERSE EMPLOYMENT ACTION

      "Adverse employment actions include discharge, refusal to hire, refusal to promote,

demotions, reduction in pay, and reprimand." See Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999)(citations omitted).  Plaintiff satisfies this second prong of her prima facie case because, as discussed previously in Section II.A.1 supra, defendants' failure to promote plaintiff to the comparatively distinguished title of "Minicomputer Operator" can be classified as an adverse employment action.

### 3.  CAUSAL CONNECTION

A causal connection between the protected speech and adverse employment action may be found if the connection is "sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech."  Morris,  196 F.3d at 110 (citing Mount Healthy, 429 U.S. at 283-87).

Plaintiff testified that she was "being retaliated against because [she] went before the Civil Service Commission on issues as a union official." (Plaintiff Depo. at 135).  However, the Civil Service Commission has not had any role in deciding a promotion for plaintiff since 1990. (Colligan Aff't ¶ 14).  In addition, plaintiff denies knowing of any specific individual that may have acted in retaliation against her for her alleged comments. (Plaintiff Depo. at 135-36).  Plaintiff's own testimony reveals that her claim of retaliation is speculative and her statements contained therein undercut the conclusion that her speech was a substantial motivating factor in her not being promoted.

### D. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

Connecticut's common law tort of intentional infliction of emotional distress requires that four elements be established: (1)  the defendant intended to inflict emotional distress or knew it would result; (2) the defendant's conduct was extreme and outrageous; (3) the conduct caused the plaintiff's distress; and (4) the plaintiff's resulting emotional distress was

severe. <u>Petyan v. Ellis</u>, 200 Conn. 243, 253 (1986)(multiple citations omitted). Extreme and outrageous conduct is that which "go[es] beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." <u>Appleton v. Bd. of Ed. of the Town of Stonington</u>, 254 Conn. 205, 211 (2000)(quotations & citation omitted). It does not include conduct that is "merely insulting or displays bad manners or results in hurt feelings." <u>Appleton</u>, 254 Conn. at 211 (citation omitted.)

Plaintiff alleges three separate instances of defendants' conduct to substantiate her claim of intentional infliction of emotional distress: (1) failure to promote plaintiff to positions for which she applied and for which she was qualified; (2) a continued pattern of harassment and abuse; and (3) retaliation and punishment for her complaints regarding political favoritism. (Dkt. #1, Count Seven, ¶ 7). Plaintiff has provided insufficient evidence of defendants' intent to inflict emotional distress and plaintiff has failed to demonstrate that defendant's conduct caused plaintiff distress that was severe in nature. Moreover, the alleged harassment by defendant Buckley and defendants' failure to promote plaintiff is not extreme and outrageous as it does not rise to the level of "atrocious" and "intolerable" conduct. <u>Appleton</u>, 254 Conn. at 211 (citation omitted).

## E. QUALIFIED IMMUNITY

Defendants also claim qualified immunity in response to plaintiff's constitutional claims. (Dkt. #28, at 34). In light of the conclusions reached in Section II. A-D <u>supra</u>, there is no need to address this issue.

## III. CONCLUSION

Accordingly, for the reasons stated above, defendant's Motion for Summary Judgment (Dkt. #27) is <u>granted</u>.

Dated at New Haven, Connecticut, this 10th day of February, 2004.

_____/s/_____
Joan Glazer Margolis
United States Magistrate Judge